```
                UNITED STATES DISTRICT COURT
                         FOR THE
                    DISTRICT OF VERMONT

Kathryn A. Hitzig,              :
      Plaintiff,                :
                                :
      v.                        :      File No. 1:08-CV-102
                                :
Matthew B. Hubbard              :
and Jeff Hudon,                 :
      Defendants.               :
```

OPINION AND ORDER
(Doc. 15)

*Pro se* plaintiff Kathryn Hitzig brings this action claiming that she was illegally interrogated and denied appropriate medical care after being injured in a car accident. Defendants Matthew Hubbard and Jeff Hudon were Windham County Deputy Sheriffs at the time of the accident. Pending before the Court is the defendants' second motion to dismiss, in which they argue that the claims brought against them are barred by the Eleventh Amendment. The motion is unopposed. For reasons set forth below, the motion to dismiss (Doc. 15) is GRANTED to the extent that the complaint includes official capacity claims.

Factual Background

For the limited purpose of ruling on the motion to dismiss, the facts alleged in the complaint will be accepted as true. On May 5, 2005, Hitzig was driving on East West Road in Dummerston, Vermont when she collided head-on with another

1

car. Although she was wearing her seatbelt and her air bag deployed, Hitzig struck her head on the windshield. She was unconscious for "at least ten minutes," and has an incomplete memory of the 24-hours following the accident. (Paper 2 at 3).

Defendants Hubbard and Hudon responded to the accident scene, along with paramedics. Hitzig remembers the paramedics strongly recommending that she be taken to a hospital immediately for an evaluation of her head trauma and other injuries. She also recalls asking Hubbard and Hudon "repeatedly to be taken to the Hospital." Id. Hubbard instead informed the paramedics and others who stopped to assist that he and Hudon would be taking Hitzig to a hospital. The complaint alleges that, in doing so, "Deputy Sheriffs Hubbard and Hudon assumed all the responsibility for Kathryn Hitzig's medical care despite the fact that they were not qualified to do so." Id. at 4.

Before taking Hitzig to a hospital, the defendants required her to undergo field sobriety tests. One such test asked her to stand on one leg for 30 seconds. The complaint contends that these tests were unnecessary, as "a simple blood test could have been performed to determine if Ms. Hitzig received any medical treatment." Id.

The complaint also alleges that Hitzig was "subjected to intense questioning . . . during the approximate three-hour interval before [she] received any medical treatment." Id. This questioning was performed without an explanation of her rights, and despite the fact that she had just suffered a head trauma. Hitzig claims that in the hours immediately after her accident, she was confused about the nature of her injuries and about her physical location. She alleges that conducting sobriety tests under these conditions was "cruel and unusual," and that her interrogation violated her right against self-incrimination. The complaint does not allege whether Hitzig was charged with criminal conduct in relation to her car accident.

As to her injuries, Hitzig allegedly suffered a grade three concussion. The complaint asserts that prompt treatment of such an injury can "greatly decrease" or "completely eliminate" its long-term effects. "A three-hour delay in clinical assessment and subsequent treatment is critical." Id. at 5.

Hitzig claims that due to the defendants' delay in transporting her to a hospital for treatment, she now suffers from frequent and severe headaches; increased forgetfulness; occasional dizziness; sleep disturbances; and bad dreams. She also alleges that her performance as a professional alpine ski

racer and her academic career have been impacted by her medical condition.  She is seeking $25 million in damages.

## Discussion

The defendants have moved to dismiss the case, arguing that they are immune from suit under the Eleventh Amendment. At the outset, the Court notes that even if the Eleventh Amendment applies in this case, it would only pertain to the defendants in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Individual capacity claims are not protected by the Eleventh Amendment.  Hafer v. Melo, 502 U.S. 21, 30-31 (1991);  Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).  Giving Hitzig's *pro se* complaint the required liberal reading, the Court construes it as alleging claims against the defendants in both their official and individual capacities.  See, e.g., Oliver Sch. Inc. v. Foley, 930 F.2d 248, 252 (2d Cir. 1991); Brown v. Lindsay, 2010 WL 1049571, at *17 (E.D.N.Y. March 19, 2010); Percinthe v. Julien, 2008 WL 4489777, at *5 (S.D.N.Y. Oct. 4, 2008).

The Eleventh Amendment of the United States Constitution prohibits suits brought in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional immunity by Congress.  See, e.g., Puerto Rico

4

Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984).  The Eleventh Amendment also bars claims for damages brought against state employees sued in their official capacities.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Pennhurst, 465 U.S. at 102.  Relevant to this case, there has been no waiver of the State's sovereign immunity and no abrogation of that immunity by Congress.  In fact, the Vermont legislature has specifically preserved the State's immunity under the Eleventh Amendment.  See 12 V.S.A. § 5601(g).

In Huminski v. Corsones, the Second Circuit considered whether an employee of a sheriff's department in Vermont, acting in his official capacity, is a state official entitled to Eleventh Amendment immunity.  396 F.3d 53, 70-74 (2d Cir. 2005).  The court stated that the test for "[w]hether a defendant is a state or local official depends on whether the defendant represented a state or a local government entity when engaged in the events at issue."  Id. at 70 (citing McMillian v. Monroe County, 520 U.S. 781, 785-86 (1997)).

> Relevant factors in determining the status of an
> official include how the state's laws and courts
> categorize the official; whether the official is
> elected and by whom; the scope of the official's
> duties; to whom the official is fiscally
> responsible, if anyone; which governmental entity
> sets or pays the official's salary; which
> governmental entity provides the official's

> equipment, if any; and the scope of the official's jurisdiction. See [McMillion] at 787-91, 117 S. Ct. 1734. <u>For a law-enforcement official, the most important factor in making this determination is whether he or she has the authority to investigate and enforce the state's criminal law.</u> See id. at 790, 117 S. Ct. 1734.

Id. at 71 (emphasis added).

The Huminski court analyzed the Vermont statutes regarding sheriffs and full-time deputy sheriffs and concluded that, in that instance, the defendant was a state official. In reaching its conclusion, the court noted that employees of a sheriff's department are eligible to join the state employees retirement system, and "must provide the Vermont Commissioner of the Department of Finance and Management . . . quarterly reports as to their compensation received as sheriffs." Id. at 72 (citing 24 V.S.A. § 290(a)). The court also cited the fact that the "Vermont Auditor of Accounts has the power to audit each department's accounts at any time, receives information from the state's sheriff's departments and sheriffs about these accounts, establishes a uniform accounting system for these departments, and annually reviews the accounting records thereof." Id. (citing 24 V.S.A. §§ 290b(b)-(e)). Finally, the court found that Vermont law "establishes the most important factor in this inquiry, see McMillion, 520 U.S. at 790, 117 S. Ct. 1734: [the defendant] had the authority to investigate and enforce the State of

6

Vermont's criminal law . . . ."  Id. at 73.  Although the Huminski court found it unnecessary to decide this "broader issue," it nonetheless concluded that "in light of the statutory structure," a sheriff or deputy sheriff in Vermont is "likely a state official when he [is] performing his general duties . . . ."  Id. at 73.

In this case, the defendants are deputy sheriffs who arrived at the scene of an accident and allegedly investigated the possibility that Hitzig was under the influence of drugs or alcohol.  In doing so, it is plain that the defendants were investigating and, if necessary, enforcing the State of Vermont's criminal law.  It is also clear that, in the words of the Huminski court, the defendants were performing their "general duties."  Id.  Given the guidance provided by the Huminski decision, the Court finds that defendants Hubbard and Hudon were acting as state officials, and are thus entitled to Eleventh Amendment immunity for the damages claims brought against them in their official capacities.

Assuming, for the sake of argument, that Eleventh Amendment immunity does not apply, Hitzig's claim against the defendants in their official capacities would instead be barred as a matter of municipal law.  Indeed, any claim against the defendants in their official capacities, if not protected by the State of Vermont's Eleventh Amendment

7

immunity, would be treated as a claim against the county that employed them.  See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978) (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"); Mathies v. Fries, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer.") (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)); Riley v. Town of Bethlehem, 44 F. Supp. 2d 451, 465 (N.D.N.Y. 1999) ("It is apodictic that claims against an individual in his official capacity are to be treated as claims against the municipality.").

It is well established that municipalities and other local governments cannot be held liable under § 1983 for the actions of their employees under a *respondeat superior* theory. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997).  Furthermore, such entities will only be liable if the challenged action was performed pursuant to a policy or custom that caused the plaintiff's injury.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).  A single incident involving an employee below the policy-making level

is insufficient to support an inference of a municipal custom or policy, Vann v. City of New York, 72 F.3d 1040, 1050 (2d Cir. 1995) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)), absent factual allegations "tending to support, at least circumstantially, such an inference." Zahra, 48 F.3d at 685.  "In particular, a complaint alleging that a municipality was 'deliberately indifferent' to the need to train, monitor, or supervise an officer, but not alleging any facts beyond the specific instance giving rise to the complaint, generally fails to adequately to [sic] plead a custom or policy on the part of the municipality." Brewster v. Nassau County, 349 F. Supp. 2d 540, 549 (E.D.N.Y. 2004) (citing Dwares v. City of New York, 985 F.2d 94, 101 (2d Cir. 1993); Sarus v. Rotundo, 831 F.2d 397, 402 (2d Cir. 1987)).

    In this case, Hitzig does not contend that any of the alleged constitutional deprivations were caused by, or occurred pursuant to, an official custom or policy of Windham County or its Sheriff's Department.  She makes no allegation of "a recurring pattern," or that actions by the officers in question had been "the subject of complaints." Brewster, 349 F. Supp. 2d at 549.  Because Hitzig has not alleged facts that would establish municipal liability, and accepting that either the Eleventh Amendment or municipal law is applicable here,

9


the motion to dismiss her official capacity claims against the defendants is GRANTED.

## Conclusion

For the reasons set forth above, the defendants' second motion to dismiss (Doc. 15) is GRANTED.  All official capacity claims brought against the defendants are DISMISSED.

The parties shall jointly prepare and file a proposed Discovery Schedule, pursuant to Local Rule 26(a), on or before September 10, 2010.

Dated at Brattleboro, in the District of Vermont, this 16th day of August, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge